IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

*Norfolk Division*

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | Criminal No. 2:16cr165 |
| | ) | |
| v. | ) | |
| | ) | |
| COREY BRANCH, | ) | |
| | ) | |
| Defendant. | ) | |

## **POSITION OF THE UNITED STATES WITH RESPECT TO SENTENCING**

The United States of America, through its attorneys, Dana J. Boente, United States Attorney, and Andrew Bosse, Assistant United States Attorney, hereby submits its position with respect to the defendant's sentencing factors.  In the Presentence Investigation Report (PSR) prepared in this matter, the United States Probation Office determined the applicable guidelines range to be a term of 151 to 188 months' imprisonment.  The Probation Office calculated a Total Offense Level of 31 and a Criminal History Category of IV.  In accordance with Section 6A1.2 of the Sentencing Guidelines Manual and this Court's policy regarding sentencing, the United States represents that it has reviewed the PSR and consulted with the Probation Office and defense counsel.  The government does not dispute any of the sentencing factors set forth in the PSR or the guidelines range calculation.  The government understands that the defendant is withdrawing his objection to the calculated drug weight.  For the reasons outlined below, the United States respectfully submits that a sentence at or above the middle of the calculated guidelines range is appropriate in this case and would be sufficient, but not greater than necessary, to accomplish the goals of 18 U.S.C. § 3553(a).

I.      **Motion**

The United States moves this Court, pursuant to U.S.S.G. § 3E1.1(b) and based upon the terms of the binding plea agreement in this case, to grant a one-level reduction in the defendant's offense level for acceptance of responsibility. The defendant timely notified the United States of his intention to enter a plea of guilty, thereby allowing the United States to avoid preparing for trial and permitting the United States and the Court to allocate their resources efficiently.

II.     **Background**

On December 7, 2016, the defendant was named in a two-count indictment charging him with possession with intent to distribute fentanyl, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C), and with being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). Docket No. 1. On April 7, 2017, the defendant pleaded guilty to both counts of the indictment at a hearing held by Magistrate Judge Robert Krask. Docket Nos. 17-22. The defendant is scheduled to appear before this Court for sentencing at 2:00 p.m. on Tuesday, September 26, 2017.

III.    **Position on Sentencing and Argument**

"[I]n imposing a sentence after *Booker*, the district court must engage in a multi-step process. First, the court must correctly determine, after making appropriate findings of fact, the applicable guideline range." *United States v. Moreland*, 437 F.3d 424, 432 (4th Cir. 2006). "Next, the court must 'determine whether a sentence within that range serves the factors set forth in § 3553(a) and, if not, select a sentence [within statutory limits] that does serve those factors.'" *Id.* (quoting *United States v. Green*, 436 F.3d 449, 455 (4th Cir. 2006)). In making this determination,

> a sentencing court must consider "the nature and circumstances of the offense and the history and characteristics of the defendant"

2

> and the need "to reflect the seriousness of the offense," provide "just punishment," "afford adequate deterrence," "protect the public," and "avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct."

*United States v. Hampton*, 441 F.3d 284, 287 (4th Cir. 2006) (quoting 18 U.S.C. § 3553(a)).

    A)    <u>Nature and Circumstances of the Offense</u>

The drug the defendant possessed, and his repeated recourse to the illegal possession of a firearm, combine to make the nature and circumstances of the offense quite serious. The defendant was caught on September 21, 2016, with a quarter kilogram of fentanyl. PSR ¶ 5. The DEA began investigating the defendant after receiving a tip that he was a wholesale heroin and cocaine trafficker with an out-of-state source of supply. Evidence taken from his car and the house he was using on the date of his arrest is consistent with that tip: in addition to the drugs, officers found over $1,000 in cash, digital scales, gel capsules, a cutting agent, a coffee can with a false bottom, and wrapping materials consistent with the transportation of a large amount of narcotics. PSR ¶¶ 5, 8. They also found the loaded Beretta handgun that is the basis for Count Two.

The defendant's trafficking of that load of fentanyl was not a one-time occurrence. A cooperating defendant described purchasing a total of approximately one half kilogram of fentanyl from the defendant between the summer of 2015 and early 2016. PSR ¶ 9. Fentanyl, an extremely powerful synthetic opioid—pure fentanyl is many times more powerful than pure heroin—is an extraordinarily dangerous drug that has fueled an epidemic of opioid abuse and overdoses in Hampton Roads and across the nation. The potential lethality of fentanyl, and the amount the defendant possessed on a single day during a long run of drug-dealing, highlight the seriousness of the offense.

Compounding that is the defendant's possession, yet again, of a gun. The defendant's previous appearance in this Court was for the same crime. *See* Crim. Case No. 2:05cr70. And as described below, he has multiple prior state convictions for the illegal possession or use of a gun. The defendant's family has been devastated by gun violence and illegal gun possession—two of his brothers were shot and killed, and a third brother, Timothy Branch, who is currently incarcerated in the state system, was previously convicted in this Court of being a felon in possession of a firearm. *See* Crim. Case No. 2:04cr56. The defendant himself, in 2000, shot and permanently injured a man. PSR ¶ 37. Despite all of that, the defendant again made the choice to arm himself—not just on the day of his arrest, but, according to two government witnesses, regularly during the course of his drug dealing. PSR ¶¶ 9, 11. Self-defense is not a legitimate reason. The defendant chose to traffic drugs, knowing the risks that line of work entailed, and armed himself with the tools to once again do violence. That decision, along with his trafficking in fentanyl, more than merits a significant sentence within the guidelines range.

  B) <u>History and Characteristics of the Defendant</u>

The defendant is 36 years old. He was raised by his grandparents in Portsmouth, in what is described as a stable and loving environment, albeit one in which his biological father was largely absent. PSR ¶ 53. He began running with a "bad crowd" at 11, and was committing crimes by the time he was 13. PSR ¶ 53. He has no current problems with drugs or alcohol, no major impediments to working, and very little work history. PSR ¶¶ 64, 67-68, 79-84.

The defendant's juvenile record began at age 14, when he was convicted of possessing a firearm. PSR ¶ 33. A sentence of probation was revoked one year after it was imposed, and he was committed to the Department of Juvenile Justice. PSR ¶ 33. After he was released, his parole was revoked after the defendant committed new offenses, and he was again sent to the

4

Department of Juvenile Justice.  PSR ¶ 33.  Two months after his first arrest, he was arrested for a string of breaking and entering offenses and convicted of four of them.  PSR ¶ 34.  At age 17, he was convicted of obstructing justice, for escaping from his grandmother's house while a police officer was attempting to arrest him on an outstanding warrant.  PSR ¶ 35.  Later the same year, he was convicted of possession of marijuana and, for the second time, for illegally possessing a firearm—a loaded Ruger pistol.  PSR ¶ 36.

His first adult conviction also involved a gun, but the charge was significantly more serious.  According to the PSR, the defendant's conviction for malicious wounding and use of a firearm in the commission of a felony was for a shooting on Airline Boulevard that permanently injured the legs of his victim.  PSR ¶ 37.  He received an active state sentence of only three years.  He was not compliant during his term of supervision, and his probation was ultimately revoked when he racked up another gun conviction.  PSR ¶ 37.  That occurred in this Court, in 2006, for the possession of a loaded Smith & Wesson Model 5946 9mm handgun.  PSR ¶ 42.  This time, the defendant received a significant sentence:  105 months'.  PSR ¶ 42.  He began the offense conduct in this case while still under federal supervision.  PSR ¶ 42.

The defendant's record and personal history show that he chose, at a young age, to take up the life of the streets.  He has been arrested and convicted numerous times for possessing guns and for doing violence with a gun.  Those arrests and sentences appear to have done nothing to deter him from returning to the same crime, this time combined with the trafficking of an extraordinarily dangerous narcotic.  Whether any sentence given by the Court will serve to deter this defendant, given his history, is unknowable.  Certainly multiple convictions, relatively lenient state sentences, state and federal supervision, and a significant sentence in this Court have not done so; if anything, the defendant's conduct has continued to escalate.  The government

requests a sentence of at least 169 months, which is in the mid-range of the guidelines calculation, to reflect the seriousness of the offenses, provide just punishment for them, promote respect for the law—which has been absent from the time the defendant was a very young man—and to protect the public from further crimes committed by him. Should that sentence finally deter the defendant from continuing to commit crimes, so much the better.

## IV.     Conclusion

Taking all the Section 3553(a) factors into account, the government respectfully submits that a guidelines sentence of at least 169 months' is appropriate and not greater than necessary.

Respectfully submitted,

Dana J. Boente
United States Attorney

By:     /s/
Andrew Bosse
Assistant United States Attorney
United States Attorney's Office
101 West Main Street, Suite 8000
Norfolk, VA 23510
Office Number: 757-441-6331
Facsimile Number: 757-441-6689
andrew.bosse@usdoj.gov

<u>CERTIFICATE OF SERVICE</u>

     I HEREBY CERTIFY that on this 19th day of September, 2017, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification to all counsel of record, including:

>James O. Broccoletti, Esq.
>Zoby, Broccoletti & Normile, P.C.
>6663 Stoney Point South
>Norfolk, Virginia 23502
>Office Number: 757-466-0750
>
>*Attorney for Defendant Corey Branch*

     I HEREBY CERTIFY that on this 19th day of September, 2017, I sent by electronic mail a true and correct copy of the foregoing to the following:

>Robyn S. Basilio
>U.S. Probation Officer
>600 Granby Street, Suite 200
>Norfolk, Virginia 23510

>    /s/
>Andrew Bosse
>Assistant United States Attorney
>Attorney for the United States
>United States Attorney's Office
>101 West Main Street, Suite 8000
>Norfolk, VA 23510
>Office Number: 757-441-6331
>Facsimile Number: 757-441-6689
>andrew.bosse@usdoj.gov